

_____
Honorable Natalie M. Cox
United States Bankruptcy Judge

Entered on Docket
November 24, 2020

_____

GARMAN TURNER GORDON LLP
GERALD M. GORDON
Nevada Bar No. 229
E-mail: ggordon@gtgt.legal
MARK M. WEISENMILLER
Nevada Bar No. 12128
E-mail: mweisenmiller@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Debtor*

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| In re: | Case No.: BK-S-20-14451-nmc |
|---|---|
| LAS VEGAS MONORAIL COMPANY, | Chapter 11 |
| Debtor. | |
| | Sale Hearing Date: November 24, 2020<br>Sale Hearing Time: 10:30 a.m. |

**ORDER PURSUANT TO SECTIONS 105(a), 363, 365, 503(b), AND 507(a)(2) OF THE BANKRUPTCY CODE: (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF DEBTOR, SCHEDULING AN AUCTION AND SALE HEARING, AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF; (II) APPROVING THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS; (IV) WAIVING THE REQUIREMENTS OF BANKRUPTCY RULES 6004(h) AND 6006(d); AND (IV) GRANTING RELATED RELIEF**

Debtor and debtor-in-possession, Las Vegas Monorail Company ("**Debtor**"), filed the *Debtor's Motion Pursuant to Sections 105(a), 363, 365, 503(b), and 507(a)(2) of the Bankruptcy*

112880761.1

*Code: (I) Approving Bidding Procedures for the Sale of Substantially All Assets of the Debtor, Scheduling an Auction and Sale Hearing, and Approving the Form and Manner of Notice Thereof; (II) Approving the Sale of Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; (III) Approving the Assumption and Assignment of Certain Related Executory Contracts; (IV) Waiving the Requirements of Bankruptcy Rules 6004(h) and 6006(d); and (IV) Granting Related Relief* [ECF No. 12] ("**Bidding Procedures and Sale Motion**")[1] on September 7, 2020, seeking, among other things, approval of bidding procedures, approval of stalking horse protections, entry of an order authorizing the sale of the Sale Assets free and clear of liens, claims, encumbrances, and other interests ("**Sale**"), authorizing the assignment of certain easements, franchise agreements, agreements and plans and specifications (collectively, the "**Assigned Agreements**"), assumption and assignment of certain unexpired leases and executory contracts ("**Executory Contracts**") as described in Section 2.1 of the Approved Agreement.

The Bidding Procedures and Sale Motion came on for hearing before the above-captioned Court for an initial hearing on September 11 and then September 22, 2020 ("**Bidding Procedures Hearings**"), an order approving the bidding procedures and stalking horse protections was entered on September 30, 2020 [ECF No. 98] ("**Bidding Procedures Order**"), the Bidding Procedures and Sale Motion related to approving the Sale of Assets free and clear of liens, claims, interests, and encumbrances, approving the assumption and assignment of certain related executory contracts, and waiving the requirements of Bankruptcy Rules 6004(h) and 6006(d) came on for a final hearing on November 10, November 13, November 20, and then November 24, 2020 ("**Sale Hearings**" and together with the Bidding Procedures Hearings, "**Hearings**"), and Debtor appeared by and through its counsel, Gerald M. Gordon, Esq. and Mark M. Weisenmiller, Esq. of Garman Turner Gordon, and all other appearances were noted on the record. The Court reviewed the Bidding Procedures and Sale Motion, the Bidding Procedures Order, and the other pleadings, declarations, objections and papers on file, including ECF Nos. 12-13, 20, 35, 39, 63, 65, 68, 71,

---

[1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Bidding Procedures and Sale Motion or Omnibus Reply [ECF Nos. 181 & 184], as applicable. The term "Sale Assets" as used in the Bidding Procedures and Sale Motion is the same as "Purchased Assets" in the Stalking Horse Agreement.

112880761.1

79-80, 98, 103, 130, 138, 163, 181-182, 184, 196, 198-199, 203-204, 206-207, 214-215, 217, 233-234, 248-250, 252, 257, 266, and 268-270, and heard and considered the argument of counsel at the Hearings on the Bidding Procedures and Sale Motion.  It appearing that notice and an opportunity for a hearing on the Bidding Procedures and Sale Motion has been given and is appropriate under the circumstances surrounding this Chapter 11 Case and that no other or further notice need be given; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.   The Court has jurisdiction over this matter and over the property of Debtor and its estate pursuant to 28 U.S.C. §§ 157(a) and 1334.  Venue of these cases and the Bidding Procedures and Sale is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.   Approval of the Sale and related transactions contemplated in the Bidding Procedures and Sale Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014.

C.   Proper, timely, adequate, and sufficient notice of the Bidding Procedures and Sale Motion, the Sale, and the Hearings has been provided in accordance with Sections[2] 363, 365 and 105(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, and in compliance with the Bidding Procedures Order.  No other or further notice is required.

D.   A reasonable opportunity to object or be heard regarding the relief requested in the Bidding Procedures and Sale Motion at the Hearings and the Sale has been afforded to all interested persons and entities, including the following: (i) the Office of the United States Trustee ("**UST**"); (ii) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Sale Assets; (iii) all non-Debtor counterparties to the Executory Contracts; (iv) all parties who have expressed a written interest in the Sale Assets; (v) the Internal Revenue Service; (vi) all applicable state and local taxing authorities; (vii) all other creditors of Debtor; (viii) each governmental agency that is an interested party with respect to the

---

[2] "**Section**" as used herein shall refer to the sections of the Bankruptcy Code unless otherwise noted.

3

112880761.1

Sale and transactions proposed thereunder; and (ix) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. Objections, if any, to the Bidding Procedures and Sale Motion or the Sale have been withdrawn, resolved, or overruled.

E. As evidenced by the affidavits of service and affidavits previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Hearings, the Sale, and the transactions contemplated thereby, including, without limitation, the assignment of Assigned Agreements and assumption and assignment of the Executory Contracts to Successful Bidder (defined herein), has been provided in accordance with the Bidding Procedures Order and Sections 105(a), 363, and 365 and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014. The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Hearings, the Sale, or the assignment of the Assigned Agreements and the assumption and assignment of the Executory Contracts to the Successful Bidder is or shall be required.

F. Debtor has marketed the Sale Assets and Debtor and the Las Vegas Convention and Visitors Authority ("**Successful Bidder**") have respectively negotiated and undertaken their roles leading to the Sale in a diligent, non-collusive, fair and good faith manner, and in accordance with the Bidding Procedures Order [ECF No. 98]. The sale process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Sale Assets.

G. Approval of the Stalking Horse Agreement (as modified by this Order with the consent of Debtor and the Successful Bidder) and all other documents contemplated thereby or entered into in connection therewith (collectively, "**Approved Agreement**"), and consummation of the Sale at this time is in the best interests of Debtor, its estate, creditors, and all parties in interest. The Approved Agreement constitutes the highest and best offer for the Sale Assets and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. Debtor's determination that the Approved Agreement constitutes the highest or best offer for the Sale Assets constitutes a valid and sound exercise of the Debtor's business judgment.

112880761.1

H.  The Bidding Procedures and Sale Motion provides for the distribution of the Sale proceeds on the closing of the Sale from the Successful Bidder to (i) UMB and PHC for the Conduit Loan as needed to satisfy the Alternate Redemption Price, and (ii) $150,000 plus accrued interest to the closing to the SBA with regard to the EIDL Loan.  As set forth in the Approved Agreement and the Bidding Procedures and Sale Motion, UMB and PHC agreed to accept the Alternate Redemption Price of $22,035,000 plus interest to the close of the Sale ("**Closing**") provided the Closing would take place no later than November 30, 2020 (later extended to December 10, 2020, with payment of additional interest).  Up to $2,500,000 of the Alternate Redemption Price will be satisfied by the application of the reserve amounts in the possession of and under the control of UMB, pursuant to stay relief granted contemporaneously by this Court, with any balance to be returned to the Debtor.  The balance of the Alternate Redemption Price will be satisfied by the Successful Bidder from and as Sale proceeds.  The agreement by UMB and PHC to accept the Alternative Redemption Price is a significant discount from the amount which would be due on the Closing pursuant to the Conduit Loan Documents, without which Debtor's unsecured creditors would unlikely receive any distribution.

I.  To facilitate the continuance of the Hearings, UMB and PHC have agreed to extend the Closing to no later than December 10, 2020, provided that interest shall accrue at $3,772.92 per diem until the Bonds are redeemed.

J.  The Successful Bidder and the Debtor have agreed, with the support of the Official Committee of Unsecured Creditors, to amend the Approved Agreement in the following respect: (i) Section 3.1, Assumed Liabilities, shall be amended to provide that the sum of $1,842,308 will be other consideration ("**Other Consideration**") for the purchase of the Sale Assets and will not be used to assume and purchase the unsecured creditor claims as set forth on Schedule 3.1(a) of the Approve Agreement; and (ii) the Other Consideration shall be paid to the Debtor on the Closing to be held by Debtor and administered and distributed to creditors pursuant to a plan of reorganization to be filed by Debtor as provided for herein ("**Plan**").

K.  In addition to the Purchase Price, the Successful Bidder has agreed to assume and pay the amount due under the *Stipulation Between and Among Las Vegas Monorail Company, Las*

5

112880761.1

*Vegas Convention and Visitors Authority and LVM Project, LLC Regarding Debtor's Motion for Order Authorizing Rejection of Development Agreement Between Debtor and LVM Project, LLC and Sale Motion* [ECF No. 206].

L. Approval of the Approved Agreement and the consummation of the Sale is in the best interests of Debtor, its estate, creditors, and other parties in interest. Good and sufficient business justification for consummating the Sale pursuant to Sections 363 and 105(a) has been established because, among other things, Debtor, in its sound business judgment, determined that the sale of the Sale Assets is necessary to maximize the value of its estate and, unless a sale to the Successful Bidder is concluded expeditiously as provided for in the Bidding Procedures and Sale Motion and pursuant to the Approved Agreement, the value of the Sale Assets may be diminished.

M. A sale of the Sale Assets other than one free and clear of liens, claims, encumbrances and interests, including, without limitation, security interests, liens assignments, licenses, leases, contract rights, and claims of whatever kind and nature and whenever incurred, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, matured or unmatured, legal or equitable (collectively, "**Interests**") and without the protections of this Order, including payment of secured claims, would impact materially and adversely Debtor's estate and would yield substantially less value, with less certainty than any available alternatives.

N. In addition, each entity with an Interest in the Sale Assets, (i) has consented to the Sale or is deemed to have consented to the Sale, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (iii) otherwise falls within the provisions of Section 363(f), and therefore, in each case, one or more of the standards set forth in Section 363(f)(1)-(5) has been satisfied. Those holders of Interests who did not object, or who withdrew their objections, to the Bidding Procedures and Sale Motion are deemed to have consented pursuant to Section 363(f)(2). Holders of Interests are adequately protected by having their Interests, if any, attach to the cash proceeds of the Sale ultimately attributable to the property to which the Interests apply, subject to the terms thereof, with the secured creditors adequately protected by immediate distribution of sale proceeds to pay their claims, and stay relief to UMB and PHC to utilize Indenture Funds to enable Bond redemption. Therefore, approval of the

112880761.1

Approved Agreement and the consummation of the Sale free and clear of Interests is appropriate pursuant to Section 363(f) and is in the best interests of Debtor's estate, creditors, and other parties in interest.

O.  The terms and conditions set forth in the Approved Agreement are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding Debtor or its creditors under any applicable laws. The consideration to be paid by the Successful Bidder under the Approved Agreement was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate consideration for the Sale Assets.

P.  The Successful Bidder is not an "insider" of Debtor, as that term is defined in Section 101(31).

Q.  Debtor and Successful Bidder extensively negotiated the terms and conditions of the Approved Agreement in good faith and at arm's length. Successful Bidder is purchasing the Sale Assets and has entered into the Approved Agreement in good faith and otherwise has proceeded in good faith in all respects in connection with this proceeding, and is a good faith Successful Bidder within the meaning of Section 363(m) and is entitled to the protections afforded thereby.

R.  Neither Debtor nor Successful Bidder has engaged in any conduct that would cause or permit the Approved Agreement to be avoided under Section 363(n). Debtors and Successful Bidder were represented by their own respective counsel and other advisors during such arm's length negotiations in connection with the Approved Agreement and the Sale.

S.  Debtor (i) has full corporate or other power to execute, deliver and perform its obligations under the Approved Agreement, and the Sale of the Sale Assets by Debtor has been duly and validly authorized by all necessary corporate or similar action, (ii) has all of the corporate or other power and authority necessary to consummate the Sale, and (iii) has taken all actions necessary to authorize and approve the Sale and Approved Agreement.

T.  To the extent that the Court made findings of fact and conclusions of law in the course of its oral ruling on November 24, 2020, those findings of fact and conclusions of law are

112880761.1

incorporated into this Order by this reference pursuant to FED. R. CIV. P. 52, made applicable to this contested matter pursuant to FED. R. BANK. R. 7052 and 9014.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:**

1. The Bidding Procedures and Sale Motion (except those matters previously determined in the Bidding Procedures Order) is granted as provided herein.

2. The objections to the Bidding Procedures and Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits.

3. The Sale and the assignment of Assigned Agreements and the assumption and assignment of Executory Contracts to the Successful Bidder pursuant to the Approved Agreement is hereby approved and authorized in accordance with, and under Sections 363(b), 363(f), 363(m) and 365(a).

4. The terms and conditions of the Approved Agreement (as modified by this Order) and all payments and transactions contemplated thereunder are hereby approved in all respects and incorporated herein.

5. To the extent there is any conflict between the terms of this Order and the Approved Agreement, the terms of this Order shall control.

**A.    Sale Free and Clear of Interests and Distribution to Secured Creditors at Closing.**

6. Pursuant to Section 363(f), the Sale Assets may be transferred to the Successful Bidder pursuant to the Sale, free and clear of all Interests. All parties asserting any Interests, are deemed to have consented to such transfers, free and clear of any Interests. Transfer of the Sale Assets to the Successful Bidder at Closing as provided in the Approved Agreement will be legal, valid, and effective.

7. Any Interests shall attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect which they previously had against the Sale Assets, subject to the rights and defenses, if any, of Debtor with respect thereto, and the proceeds of the Sale applicable to UMB and PHC regarding the Conduit Loan as provided for in the *Agreement to Alternate Redemption Price for 2019A and 2019B Bonds, as amended* (the "**Redemption**

**Agreement**") and to the SBA with regard to the EIDL Loan shall be allocated and distributed to UMB and the SBA at Closing without further order of this Court. In addition, PHC and UMB may apply the Indenture Funds as set forth in the Redemption Agreement, with relief from the automatic stay authorized by contemporaneous order of the Court.

8. Pursuant to Section 363(b), Debtor is authorized and directed to execute and deliver, and empowered to fully perform under, consummate, and implement the Approved Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Approved Agreement, and to take all further action as may reasonably be requested by the Successful Bidder for the purpose of assigning, transferring, granting, conveying and conferring the Sale Assets to the Successful Bidder.

9. This Order shall be binding upon and shall govern the acts of all entities, including, without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Sale Assets.

10. If any person or entity that has filed a financing statement or other document or agreement evidencing liens on or interests in the Sale Assets has not delivered to Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of such Interests, each such person or entity is hereby directed to deliver all such statements, instruments and releases and Debtor and the Successful Bidder are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Successful Bidder is authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and termination of such interest. Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Sale and the Approved Agreement.

112880761.1

B. **Rejection of Executory Contracts.**

11. The *Motion for Order Authorizing Rejection of Development Agreement Between Debtor and LVM Project, LLC* [ECF No. 133] is granted. Pursuant to the *Stipulation Between and Among Las Vegas Monorail Company, Las Vegas Convention and Visitors Authority and LVM Project, LLC Regarding Debtor's Motion for Order Authorizing Rejection of Development Agreement Between Debtor and LVM Project, LLC and Sale Motion* [ECF No. 206], upon the Closing, the Successful Bidder has agreed to assume and pay the rejection damages claim set forth therein.

12. The *Motion of Las Vegas Monorail Company for Order Authorizing Rejection of Non-residential Property Lease* [ECF No. 125] is granted. Pursuant to the agreement reached by Debtor and BRE/HC Las Vegas Property Holdings, L.L.C. ("**Landlord**"), Debtor shall vacate the leased premises no later than November 30, 2020, and Landlord will accept the $38,035.38 security deposit as payment of its rejection damages claim and waive any further rejection damages claim arising from Debtor's rejection of the subject lease.

C. **Approval of Assumption and Assignment.**

13. Debtor is hereby authorized, but not directed, in accordance with Sections 363, 365 and 105(a), to: (i) assign and transfer to the Successful Bidder the Assigned Agreements; (ii) assume and assign to the Successful Bidder the contracts and leases (the "**Executory Contracts**") set forth on Schedule 5.2 of the Approved Agreement; and (iii) take such actions and execute and deliver to the Successful Bidder such documents as may be necessary to confirm such assumptions, assignments and transfers.

14. Except for the cure amounts proposed by Debtor or negotiated between Debtor and the parties set forth on Schedule 5 of the Approved Agreement ("**Cure Amounts**"), the requirements of Sections 365(b)(1) and 365(f)(2) are hereby deemed satisfied with respect to the Executory Contracts. Debtor is authorized and directed, in accordance with Sections 105(a), 363, and 365, to: (i) assume and assign and transfer to the Successful Bidder the Executory Contracts; and (ii) take such actions and execute and deliver to the Successful Bidder such documents as may be necessary to confirm such assignment and transfer. In accordance with the Approved

112880761.1

Agreement and Bidding Procedures Order, the Successful Bidder will cure or provide adequate assurance of cure of any default or breaches required to be cured under any of the Executory Contracts through payment at Closing or establishment of a reserve equal to the Cure Amounts, in accordance with Section 365(b)(1)(A) and (B) (with the Successful Bidder to bear all cure costs). The Successful Bidder has provided adequate assurance of its future performance of and under the Executory Contracts within the meaning of Section 365(b)(1)(C) and, as applicable, Section 365(b)(3).

15. The Executory Contracts remain valid and binding and in full force and effect for the benefit of the Successful Bidder in accordance with their respective terms, notwithstanding any provision in any Executory Contract (including those of the type described in Sections 365(b)(2), (e)(1) and (f)(1)) that prohibits, restricts, or conditions assignment or transfer and, pursuant to Section 365(k), Debtor shall be relieved from any further liability with respect to the Executory Contract after such assignment to and assumption by the Successful Bidder. Any provisions in any Executory Contract that prohibit or condition the assumption and assignment of such Executory Contract or allow the party to such Executory Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Executory Contract constitute unenforceable anti-assignment provisions which are void and shall be of no force or effect.

16. The Court hereby determines that the Cure Amounts established pursuant to the Bidding Procedures and Sale Motion or as otherwise agreed by the non-Debtor counterparties to the Executory Contracts constitute all of the cure that is required to be paid in order to assume and assign the Executory Contracts.

17. All other requirements and conditions under Sections 363 for the assignment of the Assigned Agreements and Section 365 for the assumption by Debtor and assignment to the Successful Bidder of each Executory Contract have been satisfied and, pursuant to the Approved Agreement, the Successful Bidder shall be fully and irrevocably vested in all right, title and interest of each Assigned Agreement and Executory Contract.

112880761.1

18. Upon assignment of the Assigned Contracts and assumption and assignment of the Executory Contracts to the Successful Bidder and payment of the Cure Amount, if any, no default shall exist under the Assigned Contracts or Executory Contracts and no non-Debtor counterparty shall be permitted to declare a default by the Successful Bidder under such Assigned Contract or Executory Contract or otherwise take action against the Successful Bidder as a result of any of Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the Assigned Contract or Executory Contract, including any failure to pay any amounts necessary to cure any defaults thereunder.  Upon entry of this Order and assignment of an Assigned Contract or assumption and assignment of an Executory Contract, the Successful Bidder shall be deemed in compliance with all terms and provisions of such Assigned Contract or Executory Contract.  Each non-Debtor counterparty to an Assigned Contract or Executory Contract is hereby forever barred from, estopped and permanently enjoined from asserting against Debtor or Successful Bidder (a) any default, arising prior to assignment or assumption of the relevant Assigned Contract or Executory Contract, or (b) any counterclaim, defense, setoff or any other claim relating to Debtor's business or the Sale Assets prior to the assignment of the relevant Assigned Contract or assignment or assumption of the relevant Executory Contract that is asserted or assertable against Debtor or Successful Bidder or the affiliates or successors of either.

D. **Good Faith.**

19. The Sale is undertaken by the parties thereto in good faith, as that term is used in Section 363(m) and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Successful Bidder, unless such authorization is duly stayed pending such appeal.  The Successful Bidder is a good faith Successful Bidder of the Sale Assets, and is entitled to all of the benefits and protections afforded by Section 363(m).

E. **Additional Provisions.**

20. The Approved Agreement and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court, provided that any such modification, amendment or supplement is not material and

112880761.1

adverse to Debtor.

21. This Order and the terms and provisions of the Approved Agreement shall be binding on all of Debtor's creditors (whether known or unknown), Debtor, the Successful Bidder, any affected third parties including, but not limited to, all persons asserting an interest in the Sale Assets, and their respective successors and assigns, including any subsequent trustee, party, entity or other fiduciary under any Section of the Bankruptcy Code with respect to the forgoing parties.

22. The provisions of this Order and the terms and provisions of the Approved Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan of Debtor, converting the Chapter 11 Case to chapter 7 or dismissing the Chapter 11 Case.

23. This Court shall retain jurisdiction (i) to enforce and implement the terms and provisions of the Approved Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the Approved Agreement executed in connection therewith, (ii) to resolve any disputes arising under or related to the Sale, the Approved Agreement, Assigned Agreements, Executory Contracts, and the Sale Assets, (iii) to interpret, implement and enforce the provisions of this Order, and (iv) to protect Debtor's and/or the Successful Bidder against any assertions of claims to the Sale Assets, Assigned Agreement, and Executory Contracts.

25. The failure to include a specific reference to any particular provision of the Approved Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Approved Agreement and all of its provisions, payments and transactions, be authorized and approved in its entirety as modified by this Order. Likewise, all of the provisions of this Order are nonseverable and mutually dependent. No transfer or other disposition of the Sale Assets pursuant to the Approved Agreement will result in the Successful Bidder having any liability or responsibility for (i) any Interest, (ii) the satisfaction in any manner of any Interest, or (iii) to third parties or Debtor, except as expressly set forth in the Approved Agreement. Without limiting the effect or scope of the foregoing, no transfer or other disposition of the Sale Assets pursuant to the Approved Agreement does or will subject the Successful Bidder to any liability for Interests against the Debtor or the Debtor's Interests in such

112880761.1

Sale Assets by reason of such transfer under any applicable bankruptcy or non-bankruptcy law, including, without limitation, or any theory of successor or transferee liability, antitrust, product line, de facto merger or substantial continuity or similar theories. The Successful Bidder is not a continuation of Debtor or its estate and there is no continuity between the Successful Bidder and Debtor.

26. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that time is of the essence in consummating the Sale to the Successful Bidder, that the Sale to the Successful Bidder must be approved and consummated promptly to preserve and maximize the value of Debtor's estate, and there is no just reason for delay in the implementation of this Order; accordingly, the Court waives any stay and expressly directs entry of judgment as set forth herein. As such, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.

**IT IS SO ORDERED.**

Prepared and Submitted by:

GARMAN TURNER GORDON LLP


By: */s/ Mark M. Weisenmiller*
　　GERALD M. GORDON
　　MARK M. WEISENMILLER
　　7251 Amigo Street, Suite 210
　　Las Vegas, Nevada 89119
　　Telephone (725) 777-3000
　　Facsimile (725) 777-3112
　　*Attorneys for Debtor*

14

112880761.1

**LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court waived the requirement of approval under LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below.

| | |
|---|---|
| LINDSAY P. KOLBA, ESQ.<br>EDWARD M. MCDONALD, JR., ESQ.<br>*Counsel for the Office of the United States Trustee* | [APPROVED] |
| BLAKELY E. GRIFFITH, ESQ.<br>*Counsel for Preston Hollow Capital* | [APPROVED] |
| SUSAN M FREEMAN, ESQ.<br>*Counsel for UMB Bank, N.A.* | [APPROVED] |
| RYAN J. WORKS, ESQ.<br>*Counsel for Las Vegas Convention and Visitors Authority* | [APPROVED] |
| VINCENT AIELLO, ESQ.<br>*Counsel for World Buddhism Association Headquarters* | [NO RESPONSE] |
| RICHARD HOLLEY, ESQ.<br>ADAM HARRIS, ESQ.<br>*Counsel for LVM Project, LLC and Robert Manzo* | [NO RESPONSE] |
| JOSEPH WENT, ESQ.<br>*Counsel for the Official Committee of Unsecured Creditors* | [NO RESPONSE] |

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

15

112880761.1